IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DOMECO FUGENSCHUH,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN MINNEHAN, Individually and in His Official Capacity as a Law Enforcement Officer for the Des Moines, Iowa, Police Department; RYAN STEINKAMP, Individually and in His Official Capacity as a Law Enforcement Officer for the Des Moines, Iowa, Police Department; DANA WINGERT, Individually and in His Official Capacity as Chief of Police for the Des Moines, Iowa, Police Department; and CITY OF DES MOINES, IOWA,<br><br>Defendants. | 4:20-cv-00227-HCA<br><br>ORDER REGARDING<br>MOTIONS FOR SUMMARY JUDGMENT |

Before the Court are the parties' cross Motions for Summary Judgment. Plaintiff, Domeco Fugenschuh ("Fugenschuh"), filed a Motion for Partial Summary Judgment. ECF No. 43. Defendants, Brian Minnehan ("Minnehan"), Ryan Steinkamp ("Steinkamp"), Dana Wingert, and City of Des Moines, Iowa ("the City"), filed resistances. ECF Nos. 54, 55, 56, 72. Each Defendant filed a Motion for Summary Judgment. ECF Nos. 44, 47, and 50. Fugenschuh filed a single resistance to all Defendants' motions for summary judgment. ECF No. 61. Defendants Steinkamp and Minnehan filed a reply in support of their motions for summary judgment. ECF No. 67, 68, 69, 70, and 71. The Court finds that oral argument is unnecessary, LR 7(c), and the Court considers the cross-motions ready for ruling.

## I. FACTUAL BACKGROUND

The following facts are either uncontested or, if contested, viewed in the light most favorable to the non-moving party.[1] *See Matsushita Elec., Indus. Co., Ltd v. Zenith Radio Corp.* 475 U.S. 574, 587–88 (1986).

### A. The Traffic Stop

This case arises out of a traffic stop that took place on July 6, 2018. ECF No. 1-1 at 2–3. Court notes that the traffic stop at issue is captured on both patrol car video and the officers' body-worn cameras. On that day, Des Moines Police Department officers, Ryan Steinkamp and Brian Minnehan, both white, were assigned to a "special enforcement team" ("SET") that focuses on attempting to locate illegal firearms, narcotics, wanted people, and gang activity. ECF No. 54-2 at ¶ 6. Fugenschuh, an African-American man, drove by the officers' patrol vehicle, sat up slightly, and turned his head to stare at the officers. *Id*. at ¶ 13. The officers did not know Fugenschuh or have any reason to believe he was gang-affiliated or had drugs or guns. ECF No. 43-2 at ¶ 12. Steinkamp and Minnehan began to follow Fugenschuh for several blocks, and Fugenschuh gave the officers the middle finger and continued to do so while the officers followed him for about eleven or twelve blocks. ECF No. 54-2 at ¶ 16; ECF No. 43-3 at 97, Pl.'s App. at 97; ECF No. 72 at ¶ 1. Fugenschuh then came to a stoplight, made a complete stop at the red light, and signaled a right-hand turn. ECF No. 54-2 at ¶ 18. Fugenschuh turned at the intersection and completed his turn into the correct lane without any other vehicles in the

---

[1] The parties have supplied the Court with a lengthy summary judgment record including, but not limited to, depositions transcripts, and body-worn camera video and dash camera video of the incident. In his motion, Fugenschuh has set forth seventy-three separate alleged undisputed facts. Defendants have filed objections to many of those facts and, in addition, have each filed their own separate undisputed facts, some of which are repetitious. The Court has been able to discern from the entire summary judgment record, including the parties' undisputed facts, responses, and the video footage, the facts set forth in this section of the Court's ruling.

intersection at the time Fugenschuh executed his turn. *Id.* at ¶ 19, 21. After Fugenschuh completed his right turn, a north-bound vehicle entered the intersection and followed behind Fugenschuh's car. *Id.* at ¶ 24. The individual officers indicated that the north-bound vehicle deployed its brake lights as it was entering the intersection. ECF No. 47-1 at ¶ 6. The officers activated their overhead lights and pulled Fugenschuh over for "cutting off" the north-bound vehicle. ECF No. 43-2 at ¶ 28. As Steinkamp approached Fugenschuh's car window, he stated, "What's up man?" ECF No. 47-2, Def. App. 555 at 01:37. Fugenschuh then asked, "Why am I getting pulled over?" *Id*. at 01:40. Before explaining the reason for the stop, Steinkamp asked Fugenschuh to step out of the car. *Id*. at 01:41. Fugenschuh responded, "Fair enough" and stepped out of his vehicle. *Id*. at 01:43. Steinkamp proceeded to handcuff Fugenschuh. *Id*. at 01:50. After Fugenschuh asked numerous times why he was stopped, Steinkamp told Fugenschuh he was pulled over for cutting off a car that had to apply its brakes. *Id*. at 01:40–02:15. Fugenschuh responded, "Cut what off?" *Id*. at 02:13. Steinkamp responded that the car had to stop for Fugenschuh. *Id*. at 02:20. Fugenschuh disputed that he cut off another car. *Id*. at 02:15–34. Minnehan asked Fugenschuh if he had his license and Fugenschuh indicated that his license was in his wallet. *Id*. at 02:35–40. Steinkamp asked Fugenschuh where his wallet was, and Fugenschuh reached for his back right pocket. *Id*. at 02:43. Steinkamp then asked, "Dude, what is your deal?" and proceeded to bend Fugenschuh over the hood of the patrol car and pull his handcuffed arms up above his body. *Id*. at 02:43–50. Fugenschuh asked, "What are you doing?" as Steinkamp pushed Fugenschuh's face into the hood of the car. *Id*. Minnehan removed Fugenschuh's wallet from his back pocket while Steinkamp frisked Fugenschuh. *Id*. at 03:05–10. During the frisk, Steinkamp asked Fugenschuh if he had insurance at which point Fugenschuh began cursing at the officers. *Id*. at 03:10. Minnehan responded, "You're going to jail now." *Id*.

3

at 02:15. Fugenschuh asked, "For what?" Steinkamp pulled Fugenschuh off the hood of the patrol car and walked him to the door of the patrol car as Fugenschuh continued to curse at the officers. *Id*. at 03:10–23. Minnehan opened the patrol car door and told Fugenschuh to "have a seat." *Id*. at 03:18. Less than one second after Minnehan told Fugenschuh to have a seat, Steinkamp shoved Fugenschuh into the back of the patrol car, telling him to "get in the car." *Id*. at 03:22. Fugenschuh fell, hitting his head on the patrol car and landing on his handcuffed wrists. *Id*. at 03:10–20. Steinkamp's body-worn camera footage shows Fugenschuh complaining of pain and the officers ordering Fugenschuh to "get up" and "sit in the car" repeatedly to which Fugenschuh responded, "give me a second" and "I can't." *Id*. at 03:26–36. Fugenschuh continued to make noises of discomfort while sitting in the patrol car with his legs out of the vehicle. *Id*. The officers continued to ask Fugenschuh to "get in the car" until Fugenschuh pulled his feet into the patrol car. *Id*. at 3:36–45. Minnehan then searched Fugenschuh's vehicle. *Id*. at 03:55–4:05. After finding marijuana "shake" and what the officers believed to be a digital scale in Fugenschuh's vehicle, Minnehan advised Steinkamp that Fugenschuh "was going to jail for weed, too." *Id*. at 04:50. As it turns out the scale was a portable phone charger. *Id.* at 28:20–30:00. While in the patrol car, Steinkamp stated to Fugenschuh, "We don't care about this petty crap. We don't deal with that crap, but when you act the way you acted from the get-go. When we were sitting there and you looked us, like, real hard and start flipping us off." ECF No. 72 at ¶ 41.

## B.  The Court Proceedings Following the Traffic Stop

Fugenschuh was charged with a "Turning at Intersection Violation" in violation of Iowa Code § 321.311. ECF No. 54-2 at ¶ 30. A bench trial was held on November 7, 2018. *Id*. at ¶ 31. At the criminal trial, both Minnehan and Steinkamp testified that Fugenschuh had cut off another

vehicle that had the right of way, causing that vehicle to activate its brakes. ECF No. 43-3, Pl. App. Trial Audio at 01:55–04:45, 06:55–09:90. During the trial, Fugenschuh, who was pro se, asked to review the video of the stop but was informed that because the prosecution had not presented the video as evidence, the video was unavailable. *Id*. at 05:55–06:52. Fugenschuh then testified in his defense, disputing that he had pulled into oncoming traffic. *Id*. at 10:50–12:05. During trial, the Polk County prosecutor amended the initial charge to a violation of Iowa Code § 321.322(1), which is a failure to yield right-of-way violation. *Id*. at 09:45–10:20. Fugenschuh was ultimately found guilty of violating Iowa Code § 321.322(1). *Id.* at 14:27–43.

After Fugenschuh was convicted, he obtained the dash camera video from the stop and challenged the conviction. ECF No. 54-2 at ¶¶ 45, 57. At Fugenschuh's post-conviction trial on July 7, 2021, Fugenschuh argued he was not guilty of the traffic offense. *Id.* at ¶¶ 57, 62. In depositions prior to the post-conviction hearing, Minnehan testified he was unaware what the initial charge under Iowa Code § 321.311 criminalized, and Steinkamp testified that Fugenschuh had not violated Iowa Code § 321.311. *Id.* at ¶¶ 58, 59. As to the amended charge under Iowa Code § 321.322(1), Minnehan and Steinkamp testified that while there was no collision or risk of a near collision, the other driver did apply their brakes. *Id.* at ¶¶ 63, 64. The Polk County District Court found Fugenschuh not guilty of the violation and accordingly vacated his conviction. *Id.* at ¶¶ 66, 67. The Polk County District Court noted:

> The video demonstrates there was no actual danger or near collision or immediate hazard. Fugenschuh was out of the intersection before the Second Car entered it and the cars were never very close to each other, demonstrating the Second Car was not "approaching so closely as to constitute an immediate hazard during the time [Fugenschuh] was moving across or within the intersection."

ECF No. 43-1, Pl. App. at 69.

Fugenschuh then filed this action in the Polk County District Court asserting thirteen federal and state civil rights claims and naming the individual Defendants in their individual and official capacities. *Id.* at 3. Defendants removed the case to this Court and filed their answer asserting various affirmative defenses. ECF Nos. 1, 5 at 14–15.

Additional facts are set forth below as necessary.

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT

Fugenschuh's motion seeks partial summary judgment on liability on Counts 1 and 2. ECF No. 43. Defendants' motions seek summary judgment on all Fugenschuh's claims. ECF Nos. 44, 47, 50. Fugenschuh does not resist dismissal of Counts 7, 8, 9, 10, 11, or 12. ECF No. 61 at 2. Fugenschuh also does not resist dismissal of Counts 5 and 6 to the extent they are based on retaliatory marijuana arrest. *Id.* Fugenschuh filed a voluntary dismissal with prejudice of the state law claims in Counts 2, 4, and 6 based on *Burnett v. Smith*, 990 N.W.2d 289 (Iowa 2023). ECF No. 82. The Court treats the voluntary dismissal as a motion and grants the motion. *See* Fed. R. Civ. P. 41(a) (requiring voluntary dismissal to be signed by all parties or by court order). Accordingly, those Counts are all dismissed with prejudice and will not be discussed further by the Court.[2]

The remaining Counts which the Court will address in this Order are: Count 1, Unreasonable Search & Seizure: Civil Rights Violation under 42 U.S.C. § 1983: Fourth Amendment to the United States Constitution (against Defendants Steinkamp and Minnehan, individually); Count 3, Excessive Force: Civil Rights Violation under 42 U.S.C. § 1983: Fourth Amendment to the United States Constitution (against Defendant Steinkamp, individually);

---

[2] As a result of the dismissal of Counts 11 and 12, there are no counts remaining as to Dana Wingert or the City of Des Moines, and they are dismissed as Defendants.

Count 5, Retaliation: Civil Rights Violation under 42 U.S.C. § 1983: First Amendment to the United States Constitution **(based only on the traffic stop and the alleged use of force)** (against Defendants Steinkamp and Minnehan, individually); and Count 13, Assault and Battery (against Defendant Steinkamp). ECF No. 43-3, Pl. App. at 10–33.

Defendants Minnehan and Steinkamp's Motions for Summary Judgment rely on qualified immunity to Fugenschuh's federal constitutional claims. The Court will analyze, first, the legal standard for summary judgment, then the standard for qualified immunity.

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgement if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp., v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' if it 'might affect the outcome of the suit' under the governing substantive law." *Pitman Farms v. Kuehl Poultry, LLC*, 48 F.4th 866, 875 (8th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a fact is 'genuine' only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). At this stage, the Court's function is not to determine credibility, weigh the evidence, or determine the truth of the matter. *Anderson*, 477 U.S. at 249; *see also Wealot v. Brooks*, 865 F.3d 1119, 1128 (8th Cir. 2017) ("Disputed factual issues and conflicting testimony should not be resolved by the district court.").

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citing *Celotex*, 477 U.S. at 323). The Court must view the facts in the

light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences which can be drawn from the facts, *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 406 (8th Cir. 2018), that is, "reasonable inferences that may be drawn without resorting to speculation." *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004); *see also Gilkerson v. Nebraska Colocation Ctrs, LLC*, 859 F.3d 1115, 1118 (8th Cir. 2017) ("The non-moving party must substantiate his allegations by 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'") (cleaned up). There "must . . . be enough evidence to allow a rational trier of fact to find for [nonmovants] on the required elements of [their] claims." *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1115 (8th Cir. 2018). If the moving party meets its burden, the party resisting summary judgment must "go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999). Once the parties have met their burdens, the Court may grant summary judgment only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Torgerson*, 643 F.3d at 1042–43.

### B.  Federal Qualified Immunity Standard

"Qualified immunity shields [an officer] from civil liability if his conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Quraishi v. St. Charles Cty., Mo.,* 986 F.3d 831, 835 (8th Cir. 2021) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see Just v. City of St. Louis, Mo.*, 7 F.4th 761, 766 (8th Cir. 2021). When analyzing a qualified immunity defense, courts engage in a two-step inquiry: first, whether a constitutional or statutory right has been violated, and second, whether the right was clearly established at the time of the defendant's alleged misconduct. *Garang v.*

*City of Ames*, 2 F.4th 1115, 1121 (8th Cir. 2021); *Saunders v. Thies*, 38 F.4th 701, 710 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 1006 (2003). "[U]nless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1009 (8th Cir. 2017) (quoting *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009)). "Courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Garang,* 2 F.4th at 1121 (cleaned up); *see also Pearson v. Callahan*, 555 U.S. 223, 236, 241 (2009).

As to the first prong—the 'violation of a right prong'— the court considers whether a constitutional violation in fact occurred. *Saunders*, 38 F.4th at 710. As to the second prong, "[i]n order to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ehlers*, 846 F.3d at 1009 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (cleaned up). "While prior cases need not have expressly determined that the action in question is unlawful, in the light of pre-existing law the unlawfulness must be apparent." *Id*. (cleaned up).

"Under either prong of the inquiry, the district court 'may not resolve genuine disputes of fact' relevant to the issue of qualified immunity." *Wealot*, 865 F.3d at 1125 (quoting *Tolan v. Cotton,* 572 U.S. 650, 656 (2014) (per curiam)). Moreover, all disputed facts must be interpreted in the plaintiff's favor when defendants move for summary judgment based on qualified immunity. *Tolan,* 572 U.S. at 657.

### C.  Unreasonable Search and Seizure Claim

In Count 1, Fugenschuh alleges that Minnehan and Steinkamp unreasonably seized him by detaining him for a non-existent turning violation. Under 42 U.S.C. § 1983, a plaintiff must prove: "(1) a violation of a constitutional right, (2) committed by a state actor, (3) who acted

with the requisite culpability and causation to violate the constitutional right." *Kuha v. City of Minnetonka,* 365 F. 3d 590, 606 (8th Cir. 2003) (quoting *Shrum v. Kluck,* 249 F.3d 773 (8th Cir.2001)), *abrogated on other grounds*, *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 396 (8th Cir. 2007).

The Fourth Amendment to the United States Constitution protects against 'unreasonable searches and seizures," and a traffic stop constitutes a seizure of the vehicle's occupants. *Saunders*, 38 F.4th at 710 (quoting *United States v. Sanchez*, 955 F.3d 669, 674 (8th Cir.), *cert. denied*, 141 S. Ct. 930 (2020) (citations omitted)). The law was clearly established that the Fourth Amendment requires that an officer has reasonable suspicion that criminal activity may be afoot to make a traffic stop, which requires an objective and particularized basis for suspecting the individual of criminal activity. *Id.* at 710. If the officer has objective reasonable cause to believe that a motorist violated a traffic law, the officer's subjective intent for the stop is irrelevant. *Id.* at 711.

Fugenschuh moves for summary judgment as to liability on Count 1. Minnehan and Steinkamp resist Fugenschuh's Motion and request summary judgment be entered in their favor, based on federal immunity.

It is undisputed that Minnehan and Steinkamp seized Fugenschuh when they stopped him for an alleged traffic violation, and certainly when they handcuffed him and placed him in the patrol car. The resolution of the cross motions for summary judgment as to Count 1 depends on whether Minnehan and Steinkamp had reasonable suspicion for the traffic stop. The Court finds and concludes that there are disputed issues of material fact as to whether the officers did, in fact, have reasonable suspicion for the stop, a question which should be reserved for the jury. Thus,

the Court is precluded from granting summary judgment on behalf of Fugenschuh, Minnehan, or Steinkamp.

While most of the underlying facts are undisputed, there is adequate evidence in the record from which a reasonable jury could find in favor of Fugenschuh or in favor of Minnehan and Steinkamp. Fugenschuh supports his position by pointing to (1) video footage which establishes that he did not engage in a turning infraction that violated Iowa Code § 321.311,[3] and (2) Steinkamp's testimony that Fugenschuh did not violate Iowa Code § 321.311. ECF No. 43-1 at 11-13. Fugenschuh also relies on the fact that the state prosecutor amended the charge at trial to a violation of Iowa Code § 321.322(1), which states, in relevant part:

> Before proceeding, the driver shall yield the right-of-way to any vehicle on the intersecting roadway which has entered the intersection or which is approaching so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection.

Iowa Code § 321.322(1); ECF No. 43-1 at 13. Both officers admitted that Fugenschuh was not in the intersection at the same time as the following vehicle. ECF No. 43-1 at 13. Thus, to violate the statute, the evidence would have to establish that it was objectively reasonable for the officers to believe that Fugenschuh was creating an "immediate hazard." As to the "immediate hazard prong of Iowa Code § 321.322(1), Minnehan and Steinkamp testified that while there was no collision or risk of a near collision, the other driver did apply their brakes. ECF No. 54-2 at ¶¶ 63, 64. The Polk County District Court found Fugenschuh not guilty of the violation and accordingly vacated his conviction. *Id.* at ¶¶ 66, 67. The Polk County District Court noted, "The video demonstrates there was no actual danger or near collision or immediate hazard.

---

[3] In their briefs, Defendants Minnehan and Steinkamp do not argue they had an objective basis to believe Fugenschuh violated Iowa Code § 321.311. Rather, they base their position on an arguable violation of Iowa Code § 321.322(1). ECF No. 50-1 at 8; ECF No. 52 at 9.

11

Fugenschuh was out of the intersection before the Second Car entered it and the cars were never very close to each other, demonstrating the Second Car was not 'approaching so closely as to constitute an immediate hazard during the time [Fugenschuh] was moving across or within the intersection.'" ECF No. 43-1, Pl. App. at 69.[4] This culmination of evidence and inferences to be drawn from it could support a reasonable jury's finding that it was not objectively reasonable for Minnehan and Steinkamp to believe that Fugenschuh had engaged in a traffic violation.

On the other hand, there is also adequate evidence in the record from which a reasonable jury could find in favor of Minnehan and Steinkamp. The evidence regarding whether there was an objective basis to believe Fugenschuh violated Iowa Code § 321.322(1) should be evaluated based on the information known to the officers in real time. At the criminal trial, both Minnehan and Steinkamp testified that Fugenschuh had cut off another vehicle that had the right of way, causing that vehicle to activate its brakes. ECF No. 43-3, Pl. App. Trial Audio at 01:55–04:45, 06:55–09:90. The officers had the opportunity to observe the situation as it developed in real time. Although during the post-conviction relief proceedings, the Judge disagreed that the video evidence showed an "immediate hazard" was created, the Judge had the luxury of being able to review the video footage in hindsight, a luxury that was not available to Minnehan and Steinkamp in real time. The officers' viewpoint also is supported by an expert opinion from Daniel Billington. He stated, "If we give the operator of the unidentified vehicle the fastest possible reaction time for an anticipated path intrusion (e.g. the operator would have been aware of the moving Chevrolet and was assessing whether it would stop) then that leaves

---

[4] No party argues that the Judge's findings are conclusive of the issue as to whether there was an objective basis for the officers to have made the traffic stop. The Court further questions whether all or some of this information would be admissible at the trial in this case under Federal Rule of Evidence 403.

approximately 1.4697 seconds of braking time" given the distance between the vehicles. ECF No. 47-2, Defs.' App. 538–39. Billington further opined, "Had that vehicle not slowed over the 1.4697 seconds during which it would have been braking, it would have closed the distance of 56.75 feet to Mr. Fugenschuh's vehicle in approximately 1.29 seconds." *Id.* at 539. This culmination of evidence and inferences to be drawn from it could support a reasonable jury's finding that it was objectively reasonable for Minnehan and Steinkamp to believe that Fugenschuh had engaged in a traffic violation.

The Court finds and concludes there is a disputed material fact as to whether a constitutional right was violated regarding the unreasonable search and seizure claim based on the Fourth Amendment.[5] Based on the current record, the Court cannot determine whether there was a constitutional violation resulting in an unreasonable search and seizure. Accordingly, the Court denies Fugenschuh's motion for partial summary judgment, and Minnehan's and Steinkamp's motions for summary judgment on Count 1.

---

[5] The Court does not interpret Minnehan or Steinkamp to currently contend they are entitled to immunity on Count 1 based on Iowa Code § 670.4(1)(c), which states in pertinent part:
> As to any of the following claims, a municipality shall be liable only to the extent liability may be imposed by the express statute dealing with such claims and, in the absence of such express statute, the municipality shall be immune from liability: . . .
> c. Any claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

Iowa Code § 670.4(1)(c). To the extent that they are making such an argument, the Court finds and concludes that Iowa Code § 670.4(1)(c), by its very language does not provide immunity to individual officers from Iowa constitutional tort claims. *Saunders v. Thies,* No. 4:19-cv-00191-JAJ-HCA, 2020 WL 10731253, at *9 (S.D. Iowa Sept. 8, 2020) (noting § 670.4(1)(c) provides no immunity for individual officers to Iowa constitutional torts), *subsequent history omitted.* Minnehan and Steinkamp cite no cases contradicting this proposition.

### D. Excessive Force Claim

In Count 3, Fugenschuh alleges that Steinkamp violated his Fourth Amendment right to be free from excessive force when Steinkamp shoved Fugenschuh onto the hood of the car and pushed Fugenschuh after Minnehan had commanded Fugenschuh to get into the patrol car. Steinkamp moves for summary judgment, arguing he is entitled to immunity. ECF No. 52 at 11–12. Fugenschuh resists, claiming that the evidence raises a genuine issue of material fact as to whether the amount of force used was reasonable under the circumstances. ECF No. 61 at 14–20. In his opening brief, Steinkamp does not contest whether a seizure occurred when Fugenschuh was stopped, handcuffed, and ordered into the patrol car. Rather, he argues that the amount of force he used was reasonable. ECF No. 52 at 11–12.

"Excessive force claims under the Fourth Amendment are governed by a reasonableness standard." *Baude v. Leyshock,* 23 F.4th 1065, 1073 (8th Cir. 2022) (quoting *White v. Jackson*, 865 F.3d 1065, 1074 (8th Cir. 2017)). "Analyzing 'whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *White,* 865 F.3d at 1074 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "It is 'clearly established' that the use of more than *de minimis* force [on a non-resistant, non-threatening individual committing a non-serious crime] violates the Fourth Amendment." *Mitchell v. Kirchmeier,* 28 F.4th 888, 898 (8th Cir. 2022) (citing cases).

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Coker v. Ark. State Police*, 734 F.3d 838, 842 (8th Cir.

2013) (quoting *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006)); *Dooley v. Tharp*, 856 F.3d 1177, 1181 (8th Cir. 2017) ("Nevertheless, 'the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'") (quoting *Graham*, 490 U.S. at 397). The parties agree the Court should apply the *Graham* factors in assessing the reasonableness of the force used. Those factors include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect was] actively resisting arrest or attempting to evade arrest by flight." *See Graham,* 490 U.S. at 397.

      The Court now evaluates the *Graham* factors considering the summary judgment record. It is undisputed the alleged crime was a routine traffic violation, punishable as a scheduled violation under Iowa law. The officers did not know Fugenschuh before the traffic stop and had no reason to believe Fugenschuh was in possession of any guns or drugs before the stop. Steinkamp does contend that Fugenschuh's behavior suggested that Fugenschuh may have been an immediate threat to the safety of the officers. At the time Steinkamp pushed Fugenschuh onto the hood of the car and shoved him as he was getting in the patrol car, Fugenschuh was handcuffed. Steinkamp argues the record shows that Fugenschuh was larger than both officers, the encounter occurred at night, and Fugenschuh appeared to lunge at Minnehan while being verbally abusive. Steinkamp argues that the combination of those factors could cause a reasonable officer to believe he was in danger of a physical strike from the suspect. ECF No. 52 at 16–17. The Court notes that Steinkamp does not point to any record evidence that either he believed himself or Minnehan were in danger of physical violence from Fugenschuh. Steinkamp also argues Fugenschuh was actively resisting and verbally abusive to the officers. ECF No. 52

at 16–18. Steinkamp contends the *Graham* factors militate in favor of a finding that the use of the force in this case was *de minimis* and reasonable.

Fugenschuh resists an award of summary judgment to Steinkamp, arguing the *Graham* factors demonstrate that Steinkamp's use of force was unreasonable. In support of his argument, he argues there is a genuine dispute of material fact as to whether Fugenschuh was resisting arrest or otherwise noncompliant. Fugenschuh references the video of the incident and his own testimony to support his proposition that a genuine material fact dispute exists. ECF No. 61 at 16.

Steinkamp also contends that the lack of any significant or lasting injury to Fugenschuh should result in dismissal of the excessive force claim. ECF No. 52 at 12. Steinkamp correctly concedes that the Court of Appeals for the Eighth Circuit has no uniform requirement that a plaintiff is required to show more than a *de minimis* injury to establish an excessive force case. *Id.*; *see Chambers v. Pennycock,* 641 F.3d 898, 906–07 (8th Cir 2011). The nature of the injury is not dispositive of an excessive force claim. Rather, the issue is whether the force used was reasonable under the circumstances. *Chambers*, 641 F.3d at 906–07.

The Court agrees with Fugenschuh and finds and concludes there are genuine material fact disputes that preclude summary judgment to Steinkamp on the excessive force claim. The Court finds and concludes the record establishes genuine fact disputes on the issue of whether Fugenschuh was actively resisting the officers and whether a reasonable officer would have believed that a handcuffed Fugenschuh posed a safety risk to Steinkamp or Minnehan. Accordingly, the Court denies Steinkamp's motion for summary judgment as to Count 3.

### E.  Assault and Battery Claim

In Count 13, Fugenschuh alleges that Steinkamp's actions constituted an actionable

assault and battery on Fugenschuh under Iowa law. In support of his motion, Steinkamp argues that his use of force during the arrest was reasonable given the circumstances. ECF No. 52 at 22–23.

"[A]n assault only occurs if the peace officer does not reasonably believe the particular force was necessary in the circumstances." *Johnson v. Civ. Serv. Comm'n*, 352 N.W.2d 252, 257 (Iowa 1984). Iowa Code § 804.8(1), states in pertinent part:

> A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest.

Iowa Code § 804.8(1). Reasonableness for purposes of § 804.8 is measured by an objective standard. *Chelf v. Civ. Serv. Comm'n*, 515 N.W.2d 353, 355 (Iowa Ct. App. 1994) ("We find the 'reasonableness' inquiry in Iowa Code section 804.8 is an objective standard.") (citing *Graham*, 490 U.S. at 396–97); *see also Parrish v. Dingman*, 912 F.3d 464, 469 (8th Cir. 2019) (citing *Chelf*, 515 N.W.2d at 355–56); *McElree v. City of Cedar Rapids,* 372 F. Supp. 3d 770, 794 (N.D. Iowa 2019), *aff'd*, 983 F.3d 1009 (8th Cir. 2020). Therefore, if the officer's conduct was objectively reasonable, the Court must grant summary judgment on the state law assault and battery claims. *See Dooley*, 856 F.3d at 1184.

Iowa law does not permit a person to use force to resist an arrest or assist someone else in resisting arrest. Iowa Code §§ 719.1 (prohibiting interference with official acts), 804.12 (prohibiting use of force in resisting arrest). This is true "even if the person believes that the arrest is unlawful or the arrest is in fact unlawful." Iowa Code § 804.12; *see State v. Wilson,* 968 N.W.2d 903, 918 (Iowa 2022). As is true of the excessive force claim, the Court finds and concludes that there are disputed questions of material fact concerning whether the use of force by Steinkamp was objectively reasonable. For the same reasons that the Court denied summary

judgment to Steinkamp on the federal excessive force claim, the Court also denies summary judgment to Steinkamp on Count 13.

### F. Retaliation Claim

In Count 5, Fugenschuh alleges that Steinkamp and Minnehan violated his First Amendment right to free speech when they stopped him for the alleged traffic violation, placed him in handcuffs, bent him over the hood and pushed him down. ECF No. 61 at 24. Fugenschuh also alleges that the use of excessive force was retaliatory. *Id.* at 24–25. Fugenschuh previously acknowledged the retaliation claim could be dismissed to the extent that it was based on the arrest for possession of marijuana. *Id.* at 2, 23.

To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must establish "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (cleaned up), *abrogation on other grounds recognized in DeMian v. City of St. Louis, Mo.*, 86 F.4th 1178, 1182 (8th Cir. 2023). Under the third element, plaintiff must show that retaliatory motive was a "substantial factor" or "but-for cause" of the adverse action. *Id.* (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010)). In a retaliatory arrest case, plaintiff must prove a fourth element: lack of probable cause or arguable probable cause. *Peterson*, 754 F.3d at 602.

In their opening briefs in support of their motions for summary judgment, Steinkamp and Minnehan only address whether they are entitled to judgment in their favor concerning a claim of retaliatory arrest. ECF No. 52 at 25–27; ECF No. 50-1 at 10–12. They do not request summary

judgement with respect to the excessive force retaliation claim and that issue is not before the Court.

With respect to the retaliation claim as it relates to the traffic stop and arrest for violating a traffic law, Steinkamp and Minnehan base their motions on a single argument: that Fugenschuh cannot show that there was a lack of probable cause or arguable probable cause.[6] ECF No. 52 at 25–27; ECF No. 50-1 at 10–12. They do not contest the first three elements of a retaliation claim. Fugenschuh resists the motions because genuine issues of material fact exist regarding whether arguable probable cause existed for the officers to stop and arrest Fugenschuh for the traffic violation. ECF No. 61 at 24.

The Court agrees with Fugenschuh's assessment. For the reasons discussed in section II(C) of this Order, the Court finds and concludes that genuine issues of disputed material facts preclude summary judgment to Minnehan and Steinkamp on Fugenschuh's retaliatory traffic violation stop and arrest claim in Count 5.

### III. CONCLUSION

The Court **grants** Fugenschuh's request to dismiss with prejudice Counts 2, 4, and 6, and defendants' motions for summary judgment as to those three counts are **denied** as moot. ECF No. 82. For the reasons set forth in this ruling, the Court further orders as follows:

1. Counts 7, 8, 9, 10, 11, and 12 are **dismissed** with prejudice and the defendants' motions for summary judgment are **granted** as to those counts.

---

[6] Steinkamp and Minnehan do not argue that Fugenschuh's First Amendment right was not clearly established. The Court finds that it was clearly established.

2. Count 5 as it relates to a retaliatory marijuana arrest claim is **dismissed** with prejudice and Defendant Minnehan's and Defendant Steinkamp's motions for summary judgment are **granted** as to the retaliatory marijuana arrest claim in Count 5.

3. Defendants Dana Wingert and City of Des Moines, Iowa, are **dismissed** as defendants. Their motion for summary judgment is **granted**. ECF No. 47.

4. Plaintiff's motion for partial summary judgment is **denied**. ECF No. 43.

5. Defendant Steinkamp's motion for summary judgment is **denied in part and granted in part** as set forth in this order. ECF No. 44.

6. Defendant Minnehan's motion for summary judgment is **denied in part and granted in part** as set forth in this order. ECF No. 50.

7. Counts 1, 3, 5 (as to the retaliatory traffic stop and retaliatory excessive force claims), and Count 13 remain to be tried.

IT IS SO ORDERED.

DATED February 3, 2024.

Helen C. Adams
Chief U.S. Magistrate Judge